UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RODRIGO DE MEDEIROS SIQUEIRA,<br><br>Defendant | Criminal No. 25cr10456<br><br>Violation:<br><br>Count One: Misbranding of a Drug After Shipment in Interstate Commerce (21 U.S.C. §§ 331(k) and 333(a)(2))<br><br>Forfeiture Allegation:<br>(21 U.S.C. § 334 and 28 U.S.C. § 2461(c)) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

1. Defendant RODRIGO DE MEDEIROS SIQUEIRA ("MEDEIROS SIQUEIRA") resided in Quincy, Massachusetts.

2. MEDEIROS SIQUEIRA owned and operated Rodrigo Beauty Inc. ("Rodrigo Beauty"), with locations in Braintree and Milton, Massachusetts.

3. MEDEIROS SIQUEIRA offered various spa services and cosmetic procedures to clients of Rodrigo Beauty.

4. MEDEIROS SIQUEIRA was not a licensed medical professional and was not permitted to prescribe, dispense, or administer prescription drugs or perform injections.

### The Federal Food, Drug, and Cosmetic Act

5. The United States Food and Drug Administration ("FDA") regulates, among other things, the manufacture, labeling, and distribution of all prescription drugs shipped or received in interstate commerce according to the provisions of the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Section 301 *et seq.* ("FDCA").

6. The FDCA defines a "drug," in relevant part, as any article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans and any article (other than food) intended to affect the structure or any function of the human body. 21 U.S.C. § 321(g)(1).

7. Under the FDCA, a prescription drug is one that, because of its toxicity, other potential harmful effects, the methods of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer the prescription drug. 21 U.S.C. § 353(b)(1)(A). A drug is also a prescription drug under the FDCA if the FDA, when it approved the drug, limited the drug to use under the supervision of a licensed practitioner. 21 U.S.C. § 353(b)(1)(B).

8. A prescription drug may be dispensed only upon the prescription of a practitioner licensed by law to administer prescription drugs. 21 U.S.C. § 353(b)(1).

9. The FDA regulates products containing botulinum toxin—intended to be injected to treat, among other things, fine lines and wrinkles for cosmetic purposes—as prescription drugs because, due to their potential for harmful effects and the method of their use, such products are not safe for use except under the supervision of a licensed practitioner.

10. The FDA has approved several botulinum toxin prescription drugs, including, but not limited to, Botox®, Daxxify®, and Dysport®.

11. Under the FDCA, dispensing a prescription drug without the valid prescription of a licensed practitioner results in the drug being misbranded while held for sale. 21 U.S.C. § 353(b)(1).

12. The FDCA prohibits, among other things, the doing of any act that results in a drug being misbranded if the act is done while the drug is held for sale and after the drug was shipped in interstate commerce. 21 U.S.C. § 331(k).

### Botulism

13. Botulism is a rare and dangerous illness that can result from, among other things, the injection of botulinum toxin.

14. Iatrogenic botulism is caused by botulinum toxin circulating in the blood and spreading beyond the injection site, potentially resulting in life-threatening symptoms, including blurred or double vision, drooping eyelids, slurred speech, and/or difficulty swallowing or breathing.

15. While botulinum toxin is generally safe when administered by trained medical professionals, improper dosing, administration technique, or use of non-FDA-approved products may increase the risk of systemic botulism symptoms.

16. The U.S. Centers for Disease Control and Prevention ("CDC") has reported adverse effects, including iatrogenic botulism, resulting from injections of counterfeit and/or unapproved botulinum toxin products and/or from injections administered by unlicensed or untrained individuals or in non-healthcare settings, such as homes or spas.

### Misbranding of Botulinum Toxin Prescription Drugs

17. Beginning in or around August 2022 and continuing through in or around June 2025, MEDEIROS SIQUEIRA offered various cosmetic injection procedures, including the injection of botulinum toxin prescription drugs, to clients of Rodrigo Beauty.

18. MEDEIROS SIQUEIRA falsely represented to Rodrigo Beauty clients that he was a licensed medical professional authorized to perform injections.

19. The products MEDEIROS SIQUEIRA injected into his clients included non-FDA-approved botulinum toxin that MEDEIROS SIQUEIRA purchased from illegitimate sources outside the United States.

20. MEDEIROS SIQUEIRA made false statements to Rodrigo Beauty clients regarding the identity and source of the botulinum toxin products he was using for their injection procedures.

21. Beginning in or around late May 2025, MEDEIROS SIQUEIRA dispensed unapproved botulinum toxin without a valid prescription and administered it via injection to clients of Rodrigo Beauty, resulting in numerous severe cases of botulism.

22. For example, in or around May 2025, MEDEIROS SIQUEIRA injected unapproved botulinum toxin into a Rodrigo Beauty client ("Client 1"). MEDEIROS SIQUEIRA falsely represented to Client 1 that he typically used Dysport® but had switched to Daxxify®, and showed Client 1 what appeared to be a vial of Daxxify® that he was purportedly going to use for Client 1's injection procedure. MEDEIROS SIQUEIRA also falsely represented to Client 1 that he was a nurse. Soon after the injection procedure, Client 1 began experiencing stinging pain at the injection sites, and she later experienced symptoms consistent with botulism, including blurry vision, a headache, heaviness in her forehead (one of the injection sites), dizziness, and difficulty swallowing and moving. Client 1 was ultimately hospitalized in an intensive care unit, diagnosed with botulism, and treated with an anti-toxin.

23. On or about May 23, 2025, MEDEIROS SIQUEIRA injected unapproved botulinum toxin into another Rodrigo Beauty client ("Client 2"), who had been receiving botulinum toxin injections from MEDEIROS SIQUEIRA since in or around mid-2024. The day after the injection procedure, Client 2 began experiencing a heavy feeling in her face. Her

symptoms later worsened to include blurry vision and difficulty swallowing. Client 2 ultimately went to the hospital, where the medical staff diagnosed her with botulism.

24.  On or about May 28 or 29, 2025, MEDEIROS SIQUEIRA injected unapproved botulinum toxin into another Rodrigo Beauty client ("Client 3"). Beginning approximately five days later, Client 3, who believed MEDEIROS SIQUEIRA had used legitimate Botox® for her injection procedure, began experiencing symptoms consistent with botulism, including heaviness and drooping around the injection sites, lack of energy, and memory problems. Client 3 made several trips to the hospital and was ultimately treated for botulism, which her doctor reported was caused by a botulinum toxin overdose.

## COUNT ONE
Misbranding of a Drug After Shipment in Interstate Commerce
(21 U.S.C. §§ 331(k) and 333(a)(2))

The United States Attorney charges:

25.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 24 of this Information.

26.     Beginning in or around August 2022 and continuing through in or around June 2025, in the District of Massachusetts and elsewhere, the defendant,

## RODRIGO DE MEDEIROS SIQUEIRA,

with the intent to defraud and mislead, did dispense and cause to be dispensed prescription botulinum toxin drugs without the prescription of a practitioner licensed by law to administer prescription drugs, while the drugs were held for sale and after the drugs had been shipped in interstate commerce, which acts resulted in the drugs being misbranded within the meaning of Title 21, United States Code, Section 353(b)(1).

All in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

## FORFEITURE ALLEGATION
(21 U.S.C. § 334 and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

27. Upon conviction of the offense in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2), as set forth in Count One of this Information, the defendant,

RODRIGO DE MEDEIROS SIQUEIRA,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 334 and Title 28, United States Code, Section 2461(c), any misbranded drugs.

28. If any of the property described in paragraph 27 above as being forfeitable pursuant to Title 21, United States Code, Section 334 and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to $435,425, the value of the property described in paragraph 27 above, in the form of a money judgment.

All pursuant to Title 21, United States Code, Section 334 and Title 28, United States Code, Section 2461(c).

LEAH B. FOLEY<br>
United States Attorney

By: _____
LESLIE A. WRIGHT
Assistant United States Attorney

Date: December 11, 2025